UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YILENIA ARAUZ,<br><br>          Plaintiff,<br><br>     v.<br><br>M.A.C. COSMETICS, INC.,<br><br>          Defendant. | No. 2:22-cv-01663-DC-CSK<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT<br><br>(Doc. Nos. 16, 20) |

This matter is before the court on Defendant M.A.C. Cosmetics, Inc.'s ("MAC") motion for summary judgment and Plaintiff Yilenia Arauz's motion for leave to file a first amended complaint. (Doc. Nos. 16, 20). Pursuant to Local Rule 230(g), the pending motions were taken under submission to be decided on the papers. (Doc. Nos. 17, 21). For the reasons explained below, the court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for leave to file a first amended complaint.

/////

/////

/////

/////

1

# BACKGROUND

**A.    Factual Background[1]**

Defendant is a cosmetics manufacturer that sells its products online, in independent stores, and in third-party department stores, like Macy's and Dillard's. (Doc. No. 16-3 at 2.) Defendant hired Plaintiff on February 16, 2015, as a "Freelance On-Call Artist." (UF ¶ 1.) As a "Freelance On-Call Artist," Plaintiff was able to "bounce around" and work anywhere that had a MAC store or counter. (Doc. No. 16-4 at 9.) Plaintiff would call a MAC store directly to pick up these freelance positions. (*Id.*) In May or June of 2016, Plaintiff applied to transfer to a "Permanent Artist" position at the MAC counter in the Macy's department store located in Stockton, California. (UF ¶ 2.) Defendant granted Plaintiff's transfer, and she began working as a "Permanent Artist" at the Stockton location. (UF ¶ 2.)

On August 1, 2021, a robbery occurred at the Macy's department store in Stockton, where Plaintiff worked. (Doc. Nos. 16-4 at 14–16; 18-1 at ¶ 4.) Four individuals robbed the Chanel fragrance counter around 11:00 a.m. and Plaintiff discreetly recorded a video of the incident on her phone. (Doc. Nos. 16-4 at 15; 18-1 at ¶ 4.) After the individuals left Macy's, Plaintiff and other employees went to the back office, and then eventually left the building. (Doc. No. 16-4 at 16.) Plaintiff was then told by a manager to go back inside to take care of a customer at the MAC counter. (*Id.* at 16–17.)

After Plaintiff returned to the MAC counter, she saw Macy's manager Krista Griffin. (*Id.* at 17.) Plaintiff approached her and said, "I have a video of the robbery. Do you mind if I send it to you so you can provide this to the Stockton police?" (*Id.*) Griffin answered yes and said that she would like Plaintiff to send her the video, and Plaintiff did so. (*Id.*; Doc. No. 18-1 at ¶ 4.)

That same day, Plaintiff began texting her friend who worked at Dillard's, which was across the street from Macy's in Stockton. (Doc. Nos. 16-4 at 17; 18-1 at ¶ 6.) During that conversation, Plaintiff texted her friend the video of the robbery. (*Id.*) Approximately thirty

---

[1] The relevant facts that follow are partially derived from the undisputed facts as stated by Defendant and responded to by Plaintiff (Doc. No. 18-2 ("UF")). Due to the narrative gaps in the undisputed facts submitted by the parties, the court relied on the parties' declarations to present a more complete factual background.

2

minutes after Plaintiff sent the video to her friend, Griffin and an asset protection officer approached Plaintiff and asked her if she sent the video to anyone else. (Doc. Nos. 16-4 at 18; 18-1 at ¶ 7.) Plaintiff told Griffin she sent the video to her friend. (*Id.*) Griffin informed Plaintiff she needed to contact her friend to delete the video, because it was already being shared and that Plaintiff's employment would be in jeopardy if it was not deleted. (Doc. Nos. 16-4 at 18; 18-1 at ¶ 8.)

Plaintiff then called her friend and confirmed that her friend had sent the video to at least one other person. (Doc. No. 16-4 at 19.) After discovering the video had been posted to Instagram, a social media platform, Plaintiff's friend was able to get it taken down. (*Id.* at 21.) Plaintiff then informed Griffin that the video had been deleted from Instagram. (*Id.*)

Griffin then took Plaintiff to the back office and informed Plaintiff she was going to be suspended because she violated a Macy's employment policy. (*Id.*; Doc. No. 18-1 at ¶ 9.) Griffin, Grace Granados, another Macy's employee, and an asset protection employee then escorted Plaintiff outside to her car. (Doc. Nos. 16-4 at 22; 18-1 at ¶ 10.) Once Plaintiff got inside her car, she called Jasmine, her manager at MAC, to let her know she had been suspended. (Doc. Nos. 16-4 at 22; 18-1 at ¶ 11.) Thereafter, Macy's banned Plaintiff from working at Macy's. (UF ¶ 7.) Because Plaintiff worked on Macy's property, Macy's had exclusive authority to ban Plaintiff from the property, even though she was employed by Defendant. (UF ¶ 8.) Defendant had no authority to override Macy's decision to ban Plaintiff. (*Id.*)

On August 6, 2021, Plaintiff informed Paloma Vazquez, a human resources manager at MAC, that Griffin and Granados had escorted Plaintiff out of the building and that it was humiliating. (UF ¶ 5.) Defendant informed Plaintiff that there were no longer any permanent positions for her at a MAC counter or independent store. (UF ¶ 9.) Defendant told Plaintiff she could either quit or become a freelancer. (UF ¶ 10.) Plaintiff decided to become a freelancer so that she could apply for unemployment benefits. (UF ¶ 11.) After Plaintiff was suspended, she felt "sad," "very down," and "defeated," although she never sought treatment for her emotional symptoms. (UF ¶¶ 15, 17.) Approximately two months later, in October 2021, Plaintiff was hired by a different department store. (UF ¶ 16.)

**B.     Procedural Background**

On August 15, 2022, Plaintiff filed a complaint against Defendant in the San Joaquin Superior Court alleging four causes of action: harassment in violation of the Fair Employment and Housing Act ("FEHA") (claim one), California Government Code § 12940 *et. seq.*; retaliation in violation of California Labor Code § 1102.5 (claim two); intentional infliction of emotional distress (claim three); and wrongful termination in violation of public policy (claim four). (Doc. No. 1 at 16.) On September 21, 2022, Defendant removed this action to this court. (Doc. No. 1.)

On February 16, 2024, Defendant filed the pending motion for summary judgment on Plaintiff's four claims. (Doc. No. 16.) Plaintiff filed her opposition to Defendant's motion for summary judgment on March 1, 2024. (Doc. No. 18.) Defendant filed a reply thereto on March 11, 2024. (Doc. No. 19.)

On March 12, 2024, Plaintiff filed a motion for leave to file a first amended complaint to add Macy's Inc. and Griffin, a Macy's employee, as defendants. (Doc. No. 20.) Defendant filed an opposition to that motion on March 26, 2024. (Doc. No. 22.) Plaintiff filed a reply thereto on April 4, 2024. (Doc. No. 24.)

**DISCUSSION**

The court will begin with Plaintiff's motion for leave to file a first amended complaint and then turn to Defendant's motion for summary judgment.

**A.     Plaintiff's Motion for Leave to File a First Amended Complaint**

1.     <u>Legal Standard</u>

After a district court issues a scheduling order establishing a deadline for amending pleadings and that deadline has passed, the court should first apply Federal Rule of Civil Procedure 16 to determine whether to grant a party's request for leave to amend the pleadings. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).

Under Federal Rule of Civil Procedure 16(b), a district court must issue a scheduling order limiting "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). Once issued, a scheduling order "may be modified only for

4

good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. If the pretrial schedule "cannot reasonably be met despite the diligence of the party seeking the extension," the court may modify the pretrial schedule. *Id.* (citations omitted). Though the court should also consider the prejudice to the party opposing the amendment, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* The inquiry into whether the moving party has "good cause" to amend the pleadings ends if the court finds the moving party was not diligent in seeking amendment. *Id.*

2. Analysis

Plaintiff requests this court grant her leave to file a first amended complaint in order to add Macy's and Griffin as defendants in this matter. (Doc. No. 20.)

The court issued a scheduling order in this case on September 22, 2022. (Doc. No. 4.) The scheduling orders states:

> Within thirty (30) days of service of the complaint on the last party, or from the date of removal, whichever is later, the parties shall amend the complaint or join any parties pursuant to the Federal Rules of Civil Procedure. No other joinder of parties or amendments to pleadings is permitted without leave of court, good cause having been shown.

(Doc. No. 4 at 2.) Pursuant to that scheduling order, the deadline for Plaintiff to amend the pleadings passed on October 22, 2022, approximately sixteen (16) months before Plaintiff filed the pending motion on March 12, 2024. (Doc. No. 20.) The question for the court is whether Plaintiff has shown good cause to amend the pleadings at this late stage in the case. *See* Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at 609.

Plaintiff primarily argues in her motion that leave to amend should be granted because Macy's and Griffin are essential parties as they both "played significant roles in the events leading to Plaintiff's wrongful termination." (Doc. No. 20 at 8.) Plaintiff vaguely asserts she became aware of their roles in the decision to terminate Plaintiff's employment during an unspecified "meet and confer," presumably with Defendant, though Plaintiff's assertion remains unclear. (*Id.* at 8.)

5

In any event, the court does not find Plaintiff's argument to be persuasive. As Defendant points out, Plaintiff's operative complaint includes specific allegations regarding the roles Macy's and Griffin played in Plaintiff's suspension. (Doc. No. 1 at ¶¶ 17, 21, 22.) Plaintiff also attaches her Department of Fair Employment and Housing ("DFEH") complaint, which she filed on June 15, 2022, in support of her motion. (Doc. No. 20-1 at 24.) In her DFEH complaint, Plaintiff specifically identifies Griffin as a Macy's employee and describes how Griffin informed Plaintiff she was suspended from her employment and then escorted Plaintiff out of the Macy's store. (*Id.* at 22.) Plaintiff's DFEH complaint also includes allegations that Macy's told Defendant that Plaintiff was banned and "no longer ever re-hirable with Macy's and Bloomingdales." (*Id.* at 23.) Thus, Plaintiff's own evidence in support of her motion demonstrates that she was aware of the roles Griffin and Macy's played in her termination as early as June 15, 2022, two months before she filed her civil complaint and nearly two years before she filed her pending motion. (*Id.* at 24.) Plaintiff does not acknowledge this lengthy delay and fails to provide any explanation for her lack of diligence in seeking to amend the pleadings.

Therefore, Plaintiff has not demonstrated good cause for her untimely motion to amend the pleadings to add Macy's and Griffin as defendants, and thus, has not satisfied the requirements of Rule 16(b). *See Johnson*, 975 F.2d at 610 (affirming district court's denial of plaintiff's motion for leave to amend the pleadings where plaintiff did not demonstrate good cause to amend the pleadings four months after the deadline for amendment). Because Plaintiff failed to show good cause under Rule 16(b), the court need not address whether amendment is proper under Federal Rule of Civil Procedure 15. *See id.* at 608.

Accordingly, the court will deny Plaintiff's motion for leave to file a first amended complaint.

**B.    Defendant's Motion for Summary Judgment**

    1.    <u>Legal Standard</u>

When the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a

6

genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if it "might affect the outcome of the [action] under the governing law." *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Though justifiable inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations or denials of [its] pleading." *Donohue*, 987 F.3d at 841 (quoting *Anderson*, 477 U.S. at 256).

"The moving party need only prove that there is an absence of evidence to support the non-moving party's case" when the non-moving party bears the burden of proof at trial, as Plaintiff does here. *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered against a party who fails to establish the existence of an element essential to that party's case when that party bears the burden of proof at trial. *See Celotex*, 477 U.S. at 322. In such a case, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 317.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). The opposing party does not need to establish a material issue of fact conclusively in its favor to establish a factual dispute. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.

7

2. <u>Analysis</u>

  a. *Harassment (Claim One)*

FEHA protects employees from harassment based on their "race, religious creed, color, national origin, ancestry, physical disability, mental disability, reproductive health decisionmaking, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military or veteran status." Cal. Gov't Code § 12940(a).

To establish a prima facie case of harassment and hostile work environment under FEHA, a plaintiff must demonstrate that: (1) plaintiff is a member of a protected class; (2) plaintiff was subject to unwelcome harassment; (3) the harassment was based on plaintiff's membership in a protected class; (4) the harassment unreasonably interfered with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendant is liable for the harassment. *Ortiz v. Dameron Hospital Ass'n*, 37 Cal. App. 5th 568, 577 (2019). Indeed, membership in a protected class and harassment based on a protected class are "prerequisites" to a harassment claim under FEHA. *McCree v. State of Cal. Dep't of Conservation*, No. 12-cv-04127-JST, 2014 WL 1936504, at *5 (N.D. Cal. May 14, 2014) (citation omitted).

Defendant moves for summary judgment in its favor on Plaintiff's FEHA harassment claim, primarily arguing that Plaintiff cannot satisfy the first and third elements of that claim because she has no evidence that the alleged harassment she experienced was tied to any protected characteristic. (Doc. No. 16-1 at 10.) In her opposition, Plaintiff states she was harassed by Griffin during her employment with Defendant, specifically after Plaintiff sent the video of the robbery to her friend. (Doc. No. 18 at 5.) However, Plaintiff does not rebut Defendant's argument that she fails to demonstrate she is a member of a protected class and that the alleged harassment was based on Plaintiff's membership in a protected class.

The court agrees with Defendant in this regard and finds Defendant has met its burden on summary judgment of showing that there is an absence of evidence to support Plaintiff's FEHA harassment claim. Notably, Plaintiff did not allege in her complaint nor argue in her opposition to Defendant's motion that she is a member of a protected class.

8

Further, Plaintiff has not produced any evidence to show that the alleged harassment she experienced was because of her membership in a protected class. To the contrary, Plaintiff has repeatedly averred she was harassed and retaliated against by Griffin, a Macy's employee, because Plaintiff sent the video of the robbery to her friend. (Doc. Nos. 18 at 5; 1 at 22; UF ¶ 6.) In responding to Defendant's separate statement of undisputed facts, Plaintiff did not dispute that during her deposition, she testified that she did not know why Macy's employees chose to escort her out to her car after she was informed of her suspension. (UF ¶ 6.) Plaintiff also did not dispute Defendant's assertion that during her deposition, Plaintiff did not identify any protected characteristic as the basis for any of the alleged mistreatment. (UF ¶ 6.) Instead of contesting or disputing that assertion, Plaintiff stated in her response that she "shared the video footage of the robbery with Krista Griffin and told her to provide the video to the police for evidence." (*Id.*) Plaintiff has simply not provided any evidence suggesting that she was harassed by any Macy's or employees of Defendant based on her membership in a protected class. Therefore, Plaintiff fails to create a material dispute of fact that she was harassed based on any protected characteristic. *Martin v. Bd. of Trs. of Cal. State Univ.*, 97 Cal. App. 5th 149, 172 (2023), *review denied* (Feb. 14, 2024) (affirming trial court's granting of summary judgment as to plaintiff's harassment claim where plaintiff did not identify any evidence creating a reasonable inference that he was harassed based on a protected characteristic).

Accordingly, the court will grant Defendant's motion for summary judgment as to Plaintiff's FEHA harassment claim.

    b.  *Retaliation (Claim Two)*

Section 1102.5(b) of the California Labor Code provides in relevant part that

> [a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute . . . regardless of whether disclosing the information is part of the employee's job duties.

9

1  Cal. Lab. Code. § 1102.5(b).

2  To prevail on a claim for whistleblower retaliation in violation of section 1102.5(b) of the California Labor Code, a plaintiff must establish by a preponderance of the evidence "that retaliation for an employee's protected activities was a contributing factor in a contested employment action." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022). After a plaintiff has made this required prima facie showing, "the burden shifts to the employer to demonstrate, by clear and convincing evidence, that it would have taken the action in question for legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id.*

Defendant moves for summary judgment in its favor on Plaintiff's retaliation claim on the grounds that Plaintiff failed to state a prima facie case, specifically because Plaintiff did not engage in a protected activity, nor can she prove causation. (Doc. No. 16-1 at 13.) In her opposition, Plaintiff contends she was retaliated against for sharing the video of the robbery with Griffin and her friend, and she was thereafter treated "as if she had robbed the store." (Doc. No. 18 at 7–8.) Plaintiff further avers Defendant was aware of this conduct because Plaintiff immediately informed her manager, Jasmine, but Defendant failed to appropriately address the situation. (*Id.* at 8.) Notably, Plaintiff does not specifically argue in her opposition that she engaged in a protected activity.

In sending the video of the robbery to Griffin, Plaintiff did disclose an activity that was in "violation of state or federal statute." Cal. Lab. Code § 1102.5(b). However, as Defendant argues in its motion, while the protections of section 1102.5 extend to disclosures of unlawful activity by third parties, "those protections only extend to third parties such as 'contractors and employees' acting on behalf of the employer." *EpicentRx, Inc. v. Carter*, No. 3:20-cv-01058-LAB-LL, 2021 WL 8893002, at *5 (S.D. Cal. Dec. 20, 2021) (citing *McVeigh v. Recology S.F.*, 213 Cal. App. 4th 443, 471 (2013)). Plaintiff repeatedly asserts that she was retaliated against after sharing the video of the robbery with Griffin and Plaintiff's friend. (Doc. Nos. 18 at 7–8, 18-1 at ¶¶ 8–10; UF ¶¶ 3–4.) However, Plaintiff does not assert nor proffer any evidence to suggest that the individuals who committed the robbery were employees of either Defendant or Macy's. Further, Plaintiff cites to no authority to support her assertion that a disclosure of an unlawful activity by

10

an outside third party constitutes a protected activity under section 1102.5. Plaintiff's conduct in sending the video of the robbery to both Griffin and Plaintiff's friend is, simply put, not covered by section 1102.5(b) because it did not involve unlawful activity taken by third parties acting on behalf of either Defendant or Macy's. *See Carter*, 2021 WL 8893002 at *5 (explaining that plaintiff could not sustain a claim under section 1102.5 of the California Labor Code where he did not allege that any "specific wrongdoers" he reported were employed or acting on behalf of the employer); *McVeigh*, 213 Cal. App. 4th at 471 (explaining that section 1102.5 of the California Labor Code "protects employee reports of unlawful activity by third parties such as contractors and employees, as well unlawful activity by an employer"); *Cf. Tillery v. Lollis,* No. 1:14-cv-02025-KJM, 2015 WL 4873111, at *11 (E.D. Cal. Aug. 13, 2015) (finding plaintiff could state a claim under section 1102.5 of the California Labor Code where reported incident involved an individual who "was an employee at the time relevant to his alleged illegal activity for purposes of pleading a claim under section 1102.5").

Because Plaintiff fails to show she engaged in a protected activity, Plaintiff has not established a prima facie case of retaliation in violation of section 1102.5(b). Accordingly, the court will grant Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

       c.     *Intentional Infliction of Emotional Distress (Claim Three)*

Under California law, the elements of an intentional infliction of emotional distress ("IIED") claim are "(1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's conduct." *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1002 (E.D. Cal. 2015) (quoting *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005)).

Defendant moves for summary judgment in its favor on Plaintiff's IIED claim because Plaintiff admits that no employee of Defendant ever mistreated her, the upsetting conduct described by Plaintiff does not rise to the level of extreme or outrageous, and Plaintiff testified that she has not suffered severe emotional distress. (Doc. No. 16-1 at 15.) In her opposition,

1  Plaintiff counters that after she shared the video of the robbery, she was "threatened with job loss,
2  bullied, humiliated, degraded, and treated as if she had committed the robbery herself." (Doc. No.
3  18 at 8.) Plaintiff avers she suffered emotional distress because of her employment suspension
4  and her demotion to freelance artist. (*Id.* at 8–9.)

5  Defendant is correct in its assertion that Plaintiff has not alleged or proffered any evidence
6  that anyone employed by Defendant ever mistreated Plaintiff or engaged in any extreme and
7  outrageous conduct. (Doc. No. 16-1 at 16.) Plaintiff in her declaration states that she "suffered
8  emotional distress because of [her] suspension and stepping down from permanent artist to
9  freelance artist." (Doc. No. 18-1 at 4.) However, her suspension and demotion, at most, show that
10 Defendant engaged in a personnel management decision when informing Plaintiff the only
11 available position with Defendant was as a freelance artist. Because Defendant's decision to offer
12 Plaintiff a freelancer position is considered a function of personnel management under California
13 law, this conduct alone is insufficient evidence to support an IIED claim. *See Barr v. Lab'y Corp.*
14 *of Am. Holdings,* No. 19-cv-1887-MMA-MDD, 2021 WL 3856487, at *10 (S.D. Cal. Aug. 30,
15 2021) (explaining that California law "is clear that termination without more is insufficient for an
16 [IIED] claim"); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 65 (1996) ("[C]ommonly
17 necessary personnel management actions such as hiring and firing . . . promotion or demotion . . .
18 do not come within the meaning of harassment.") Further, the threatening and bullying Plaintiff
19 alleges she suffered was carried out by Griffin, who Plaintiff admits is an employee of Macy's,
20 not an employee of Defendant. (Doc. No. 16-4 at 10; UF ¶ 14.)

21 Plaintiff also has not proffered evidence sufficient to support a triable issue of fact that she
22 suffered severe or extreme emotional distress. "Severe emotional distress means emotional
23 distress of such substantial quality or enduring quality that no reasonable person in civilized
24 society should be expected to endure it." *Connell v. United States*, No. 2:08-cv-0062-GEB-CMK,
25 2010 WL 958269, at *4 (E.D. Cal. Mar. 12, 2010) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035,
26 1051 (2009)). Plaintiff states she was "sad, "very down," and "defeated" after her suspension and
27 demotion to freelancer. (UF ¶ 15.) These injuries alone do not constitute severe distress. *See*
28 *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (finding that anxiety,

12

sleeplessness, upset stomach, and muscle twitches did not constitute severe injury for the purposes of an IIED claim). Moreover, Plaintiff never sought any treatment for emotional symptoms she experienced, and she felt "at peace" once she was hired by another department store in October 2021. (UF ¶¶ 16–17.)

Therefore, Plaintiff has not raised a genuine issue of material fact and based on the undisputed evidence before the court, Defendant is entitled to summary judgment on Plaintiff's IIED claim. Accordingly, the court will grant Defendant's motion for summary judgment as to Plaintiff's IIED claim.

### d. *Wrongful Termination in Violation of Public Policy (Claim Four)*

Under California law, "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 170 (1980). To prevail on a claim for wrongful discharge, a plaintiff must demonstrate that: (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating factor for the termination; and (4) the termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004).

Defendant moves for summary judgment in its favor on Plaintiff's wrongful termination claim because Defendant did not terminate Plaintiff for sending a video to her friend, Defendant removed Plaintiff from payroll only after she did not take a single freelance job for a year, and Plaintiff's conduct of sending the video of the robbery to her friend does not implicate a public policy. (Doc. No. 16-1 at 17.) In her opposition, Plaintiff asserts in conclusory fashion that "Defendant's actions in forcing Plaintiff to step down as a freelancer and subsequently terminating her constitute wrongful termination." (Doc. No. 18 at 10.)

As a preliminary matter, Plaintiff in her opposition does not identify what violation of public policy was a motivating factor in her termination. Plaintiff does argue Defendant retaliated against her for sharing the video of the robbery. (*Id.*) Both a violation of FEHA and a violation of section 1102.5(b) may support a claim for wrongful termination. *Hunter v. Radioshack Corp.*, No.

13

1:10-cv-02297-AWI, 2012 WL 253204, at *9 (E.D. Cal. Jan. 25, 2012) (citing *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1160–61 (1998)); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012) ("Violations of California Labor Code § 1102.5 can support a common law cause of action for wrongful termination in violation of public policy.") However, a derivative wrongful termination claim fails if the underlying claims fails. *See Markowitz v. United Parcel Serv., Inc.,* 711 F. App'x 430, 431 (9th Cir. 2018)[2] (affirming summary judgment for employer on employee's wrongful termination claims where the court affirmed summary judgment on plaintiff's underlying FEHA claims); *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1150 (9th Cir. 2017) ("Merrick's other claims are derivative of his FEHA age discrimination claim, and so necessarily fail along with that claim."); *Diyorio v. AT&T*, 242 F. App'x 450, 452 (9th Cir. 2007) (affirming summary judgment for employer on employee's wrongful termination claim where the underlying claim for discrimination also failed); *Cf. Noone v. Hitachi Rail STS USA, Inc.,* No. 8:24-cv-00313-FWS-KES, 2025 WL 1118581, at *7 (C.D. Cal. Feb. 25, 2025) (denying defendant's motion for summary judgment as to plaintiff's wrongful termination claim because the claim shared the same factual and legal basis as plaintiff's section 1102.5 claim, which survived defendant's motion).

Here, Because the court finds that Defendant is entitled to summary judgment in its favor as to Plaintiff's FEHA harassment claim and section 1102.5(b) retaliation claim, Plaintiff's derivative wrongful termination claim also fails. Therefore, the court will grant Defendant's motion for summary judgment as to Plaintiff's wrongful termination claim.

In sum, the court will grant Defendant's motion for summary judgment as to all of Plaintiff's claims.

**CONCLUSION**

For the reasons set forth above:

1. Defendant's motion for summary judgment (Doc. No. 16) is GRANTED in its entirety;

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

14

2. Plaintiff's motion for leave to file a first amended complaint (Doc. No. 20) is DENIED;

3. Judgment shall be entered in favor of Defendant; and

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **July 17, 2025**

Dena Coggins
United States District Judge